**Mary Sue HUTCHISON, Plaintiff,**

**v.**

**BANK OF NORTH CAROLINA,**
**N.A., et al., Defendants.**

**No. C–74–58–G.**

United States District Court,
M. D. North Carolina,
Greensboro Division.

Heard Jan. 13, 1975.

Decided April 17, 1975.

Norman B. Smith, Greensboro, N. C., for plaintiff.

Roy M. Booth and Frederick C. E. Murray, Greensboro, N. C., for defendant Bank of N. C.

Perry C. Henson, Greensboro, N. C., and Donald A. Davis, Asst. Atty. Gen., Raleigh, N. C., for defendant Joseph P. Shore, Clerk of Superior Court of Guilford County.

William Daisy, Greensboro, N. C., for defendant Paul H. Gibson, Sheriff of Guilford County.

Before CRAVEN, Circuit Judge, GORDON, Chief District Judge, and WARD, District Judge.

GORDON, Chief Judge.

This case presents the question of whether the provisions of Section 1–440.1 et seq. of the North Carolina General Statutes, insofar as they permit the prejudgment attachment of real estate without prior notice and hearing, violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution. Plaintiff has brought this action under 42 U.S.C. § 1983 seeking damages and injunctive relief. Jurisdiction is properly invoked under 28 U.S.C. § 1343(3) and § 1331(a). A three-judge court was convened pursuant to 28 U.S.C. § 2281.

The statute in question contemplates attachment as an ancillary proceeding. The process is intended to bring the property of a defendant within the custody of a court so that it may be applied to the satisfaction of a money judgment rendered against the defendant in the principal action. N.C.G.S. §§ 1–440.1, 1–440.2. Section 1–440.3 specifies the grounds for attachment.

"§ 1–440.3. Grounds for attachment. —In those actions in which attachment may be had under the provisions of § 1–440.2, an order of attachment may be issued when the defendant is

(1) A nonresident, or

(2) A foreign corporation, or

(3) A domestic corporation, whose president, vice-president, secretary or treasurer cannot be found in the State after due diligence, or

(4) A resident of the State who, with intent to defraud his creditors or to avoid service of summons,

a. Has departed, or is about to depart, from the State, or

b. Keeps himself concealed therein, or

(5) A person or domestic corporation which, with intent to defraud his or its creditors,

a. Has removed, or is about to remove, property from this State, or

b. Has assigned, disposed of, or secreted, or is about to assign, dispose of, or secrete, property."

To secure an order of attachment, the plaintiff or his attorney must state by affidavit his intention to secure a money judgment, the nature of the action, and the amount of his claim. He must also state by affidavit the grounds for attachment and, if the grounds for attachment are that the defendant has done, or is about to do, any act with intent to defraud his creditors, the plaintiff must state the facts and circumstances supporting such allegation. N.C.G.S. § 1–440.11. The order of attachment may be issued by the clerk of the court in which the action has been commenced or by a judge of the appropriate trial division as authorized by the statute. N.C.G.S. § 1–440.5. Before the court can issue the order of attachment the plaintiff must furnish a bond in an amount sufficient to pay all costs incurred and damages sustained by the defendant by reason of the attachment if the order of attachment is dissolved, set aside or the plaintiff fails to obtain judgment against the defendant. N.C.G.S. § 1–440.10.

Further, it is provided that the defendant may move at any time to dissolve the order of attachment, which motion may be determined upon affidavits or, if requested, before a jury.[1] If the motion is heard by only the judge or clerk, findings of fact supporting the ruling will be made. N.C.G.S. § 1–440.-36. The defendant may also apply at any time to the clerk or judge for an order modifying the attachment or may

---

1. Specifically, § 1–440.36 provides that a motion to dissolve based on a defect appearing upon the face of the record is heard and determined upon the record since no issues of fact arise. When the defect alleged does not appear upon the face of the record, the motion is heard upon affidavits filed by both parties unless, prior to the hearing, a jury trial is demanded in writing. If a jury trial is demanded, the issues involved are to be determined at the same time the principal action is tried unless the judge, on motion of any party for good cause shown, orders an earlier or separate trial.

move to discharge the attachment by giving bond for the property attached. N.C. G.S. §§ 1–440.37, 1–440.39. The amount of this counter-bond is double the amount claimed by the plaintiff or double the value of the property attached whichever in the particular case is less. N.C.G.S. § 1–440.39(b). No provision is made for notice to the defendant or for opportunity for the defendant to be heard before the attachment is executed.

On February 1, 1974, the defendant Bank of North Carolina brought suit against the plaintiff, Hutchison, her son and her daughter-in-law for $17,230.90 owing on four separate notes, then in default, on which the plaintiff was a co-maker (accommodation maker). In the course of making the loans, the Bank required the plaintiff to furnish a financial statement which showed that the plaintiff owned a condominium.[2] On February 18, 1974, the Bank filed an affidavit with the Clerk of Superior Court in Guilford County alleging that the plaintiff Hutchison was about to assign the *condominium* with intent to defraud creditors. The basis for this allegation, set forth in the affidavit, was that the

plaintiff had filed an application for a loan from a savings and loan association intending to give a first mortgage on the property.[3] The order of attachment was granted by the Clerk of Superior Court and the Sheriff levied on the condominium. The Sheriff served the plaintiff with the order of attachment on February 19, 1974.[4] On February 26, 1974, the plaintiff filed this lawsuit in the United States District Court for the Middle District of North Carolina, alleging that she had been deprived of her property without due process of law *and seeking an injunction against the* Bank directing it to dissolve the attachment and prohibiting any future attachment of plaintiff's property. Granting the injunctive relief sought by the plaintiff, based on the lack of notice and opportunity for a hearing prior to the attachment, would have the effect of nullifying portions of N.C.G.S. § 1–440.1 et seq., and a three-judge court was designated.

### I.

▮ The plaintiff in its brief and at the hearing advanced the proposition

2. The defendant Bank alleges in its brief that it made the loans on the basis of this financial statement realizing that the property would constitute a fund for collection of the debt in the event of default. However, the Bank neither demanded nor took any security interest in the property.

3. This allegation appeared very clearly on the affidavit. Defendant argues that since plaintiff had not informed the Bank of this mortgage application and since it did not know what plaintiff intended to do with the borrowed money, it concluded that Mrs. Hutchison was about to assign her condominium with intent to defraud the Bank since such a mortgage would make the property unavailable for satisfaction of a subsequent judgment on the note. The Bank alleges it learned of the mortgage application on February 13, 1974, which was of course after it commenced the principal action on February 1. The plaintiff contends that the purpose of the mortgage was to obtain money to pay off the debt and that the Bank could have easily ascertained this fact by contacting the savings and loan or the plaintiff.

4. In this case, the Bank commenced suit, learned of the loan application and then obtained a writ of attachment. The procedure could be reversed. Section 1–440.7(a) provides that attachment may be issued before personal service; if so, personal service must be had within thirty days of the issuance of the order of attachment. This possibility of attachment before service bothered a three-judge court in the First Circuit faced with a prejudgment attachment statute since it allows attachment for a substantial time without the debtor's knowledge and, thus to an extent, diminishes the effect of a provision permitting a motion for dissolution. Gunter v. Merchant's Warren Nat'l Bk., 360 F.Supp. 1085, 1088 (1st Cir. 1973). In this case, the plaintiff was served, apparently as required by court rule pursuant to N.C.G.S. § 1–440.9, with the writ of attachment the day after it was executed thereby making the dissolution provision (§ 1–440.-36) immediately available to the plaintiff. Another distinguishing fact is that in *Gunter* the affidavit there required only an unsubstantiated allegation that a meritorious claim for damages existed.

that a three-judge court is not required in this case. The rationale for this position is that North Carolina's statutory scheme is not invalid *per se* and is susceptible to a constitutional construction, although it was allegedly applied in an unconstitutional manner in this case. The plaintiff contends that the state court could adopt procedures requiring an opportunity for notice and hearing prior to attachment pursuant to N.C.G. S. § 1–440.9. This section provides:

"§ 1–440.9. *Authority of court to fix procedural details.*—The court of proper jurisdiction, before which any matter is pending under the provisions of this article, shall have authority to fix and determine all necessary procedural details in all instances in which the statute fails to make definite provision as to such procedure. (1947, c. 693, s. 1.)"

Arguing that the jurisdiction of three-judge courts is subject to strict limitations, the plaintiff requested injunctive relief on the grounds of wrongful attachment in subverting a lawful statutory procedure to an unconstitutional and unlawful purpose.

The defendants took the position that the issuance of attachment without prior notice or hearing is contemplated by the statute and is the traditional state practice and, therefore, if the statute was here applied in an unconstitutional manner, it was only because the statute was unconstitutional. Defendant further contends that the history and use of N. C.G.S. § 1–440.9 clearly demonstrates that the legislature did not intend to allow state courts to interpret the statute to require a prior notice and hearing.

At the hearing, there appeared to develop a consensus among the parties that the statute did contemplate attachment without prior notice and hearing and that, at least, the prevailing practice which developed under this statute was the ex parte issuance of the writ. The

clarity of § 1–440.3 and § 1–440.11 in stating when and under what conditions an order of attachment may be issued manifests a definite procedure for granting the writ, a procedure which does not entail opportunity for prior notice and hearing. Therefore, we feel that the plaintiff's claim for injunctive relief does represent a challenge to the constitutionality of the North Carolina attachment statute particularly appropriate for resolution by a three-judge court.

II.

The constitutional issue presented is narrow but troublesome. It is whether the failure of the North Carolina attachment statute to afford the defendant-debtor notice and an opportunity to be heard, before attachment of her real property, deprives the defendant of due process of law. This issue is difficult because of the flexible character of procedural due process and the problem of ascertaining what constitutes procedural due process in this context in light of the Supreme Court decisions in Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972), Mitchell v. W. T. Grant Co., 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974), and North Georgia Finishing Co. v. Di-Chem, Inc., 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975).

*Mitchell* and *Di-Chem* are the most recent decisions in the area of pre-judgment or ex parte creditor remedies and we shall attempt to apply to this case the standards therein enunciated for determining compliance with due process.

The import of *Mitchell* is that courts should determine the need for particular procedural safeguards by balancing the potential for harm to the defendant-debtor with the interest in protecting creditor remedies.[5] In so doing, the Court seemed to repudiate aspects of the *Fuentes* decision which established "a Procrustean rule of a prior adversary

5. 416 U.S. at 604, 611–13, 94 S.Ct. 1895. *See* The Supreme Court, 1973 Term, 88 Harv.L. Rev. 71, 75 (1974).

hearing" while clearly not rejecting the decision itself in *Fuentes.*

The foundation for this "balancing test" was the Court's belief that due process has never mandated inflexible procedures but rather requires the "opportunity for a hearing and a judicial determination" at a meaningful stage within the context of the particular situation. 416 U.S. at 611–12, 94 S.Ct. 1895. The Court specifically referred to pre-*Fuentes* cases in which prejudgment attachment liens effected by creditors without notice or hearing were unanimously approved. 416 U.S. at 613, 94 S.Ct. 1895, *See* McKay v. McInnes, 49 S.Ct. 344, 73 L.Ed. 975, 279 U.S. 840 (1929); Coffin Bros. v. Bennett, 277 U.S. 29, 48 S.Ct. 422, 72 L.Ed. 768 (1928); Ownbey v. Morgan, 256 U.S. 94, 41 S.Ct. 433, 65 L.Ed. 837 (1921). To indicate, however, that the Court was applying a theoretical rationale in finding due process in *Mitchell* would be misleading. The overriding concern of the Court was to consider the effectiveness of the challenged statute in minimizing the risk that the ex parte procedure would lead to a wrongful taking. 416 U.S. at 617, 618, 94 S.Ct. 1895.

The Court applied this balancing test and this philosophy of due process to the Louisiana sequestration statute in *Mitchell.* The Court found that the debtor's interest in averting the wrongful or arbitrary deprivation of his rights in certain personal property was fairly provided by the statutory requirement that a sworn affidavit be filed testifying to the creditor's interest, his claim, the amount thereof and the grounds relied upon for the issuance of the writ. Further safeguards existed in that the showing was to be made before a judge, that a bond be posted to protect the debtor against interim damages incurred if the writ was wrongfully issued, and that the debtor could immediately move to dissolve the writ and obtain an adversary hearing at which the creditor had the burden of proof.

In assessing the constitutionality of the Louisiana statute, the Court also closely examined the creditor's interest and the state's interest in protecting creditor remedies. The Court emphasized that the creditor held a vendor's lien on the property sequestered and that the statute was necessary to protect that interest in the property. Otherwise, the vendor would risk alienation or waste of the property without installment payments to keep pace with the destruction of his security. Therefore, without an issuance of a writ prior to notice or hearing, the creditor's interest would be subject to, at worst, destruction of his property interest or, at least, "inevitable deterioration" in its value pending trial on the merits. 416 U.S. at 607–09, 94 S.Ct. 1895.

In the context of a flexible standard of due process, the Court evaluated the statute and balanced the protection afforded the creditor and his interest and the protections afforded the debtor against a wrongful or arbitrary deprivation of property. A comment on the case accurately reflects the Court's resolution:

> "Thus, in the view of the majority, the defendant's exposure to harm under the state scheme is minimized— both the probability of error and the magnitude of harm should error occur are reduced to very low levels. Since the degree of probable harm to the defendant was slight in light of the significance of the interests the state was seeking to preserve, the *Mitchell* Court concluded that the Louisiana procedure did not violate the flexible requirements of the due process clause." [6]

This decision was followed in January, 1975, by North Georgia Finishing, Inc. v. Di-Chem, Inc., *supra*, in which the Court ruled unconstitutional a Georgia statute permitting garnishment, without prior notice or hearing, of a defendant's assets ancillary to a pending suit. The

6. 88 Harv.L.Rev. at 77.

894

Court, as it did in *Mitchell,* carefully examined the statute in the context of the protections afforded the defendant whose assets were garnished and whether these protections comported with due process.

Under the Georgia statute, the writ of garnishment was issuable on the filing of an affidavit alleging the amount claimed to be due in the pending suit and the apprehension of a loss of that amount unless process of garnishment issued. There was no requirement that the creditor state the grounds or facts supporting such apprehension. The affidavit was reviewed and the writ could be issued by the clerk of any court in which the garnishment was filed or in which the main action was filed. Most importantly, there was no provision in the Georgia statute by which the debtor could move to dismiss the garnishment writ or obtain an adversary hearing at which the validity of the writ would be adjudicated. The only safeguards afforded the debtor by this entire statutory procedure were (1) the requirement that the plaintiff-creditor give bond equal to double the amount claimed in order to compensate the defendant for all costs and damages incidental to the garnishment in the event the plaintiff failed to recover in his suit and (2) the provision for dissolution of the garnishment upon the filing of a bond by the defendant.

The Court found this garnishment process to be a denial of due process. It was particularly impressed by the lack of any provision for an *early* hearing at which the garnishment could be challenged, the conclusory nature of the affidavit and the nonparticipation of a judicial officer. It explicitly distinguished the statute upheld in *Mitchell* because of the "saving characteristics" of that statute; specifically, the requirement of an affidavit which clearly set forth the facts supporting sequestration, the supervision of a judge and the provision entitling the debtor to an immediate

hearing after seizure and dissolution of the writ absent a showing by the creditor of at least probable cause for the writ. 416 U.S. at 606–607, 95 S.Ct. at 722.

## III.

The Supreme Court in *Mitchell* and *Di-Chem* have constructed a framework for analyzing the North Carolina pre-judgment attachment statute. We feel this is the balancing approach, adopted by the Court in *Mitchell,* under which the potential harm to the defendant debtor and the interests of the creditor are both considered in evaluating the statutory procedure. As strongly enunciated by *Fuentes* and reaffirmed by *Di-Chem,* the overriding consideration must be whether the statute minimizes the risk that the ex parte issuance of a writ will result in a wrongful or arbitrary deprivation consistent with the protection of legitimate creditor's remedies. These guidelines, while imprecise, do provide an applicable framework for analysis of the North Carolina statute.

We should state at the outset that we consider attachment of real property a substantial deprivation of a significant property interest subject to the protection of the due process clause. While *Fuentes, Mitchell* and *Di-Chem* concerned deprivations which were more drastic and immediately damaging than attachment of real property, we follow the cases which have pointed out that this process may entail significant harm to the debtor whose property is attached. *See, e.g.,* Gunter v. Merchants Warren Nat'l Bk., 360 F.Supp. 1083 (D.Me. 1973); Clement v. Four North State St. Corp., 360 F.Supp. 933 (D.N.H.1973).

The starting point for our analysis of the North Carolina statute is the five grounds for attachment specified in § 1–440.3. The first four grounds provide for attachment in order to secure *quasi in rem* jurisdiction in the

state court.[7] The Supreme Court has expressly upheld pre-judgment attachment in these situations and the *Fuentes* court would classify the circumstances contemplated in § 1–440.3(1)–(4) as "extraordinary situations",[8] justifying postponement of notice and hearing.

 The fifth ground for attachment is also confined to exceptional situations. Attachment may be issued against any person or corporation who, with intent to defraud his creditors, has or is about to remove, assign or dispose of property. While there may be some disagreement as to whether this is an "extraordinary situation," as defined in *Fuentes,* the statute is certainly restricted to circumstances in which the creditor is in immediate danger that the debtor will destroy or alienate the property sought to be attached.

The narrow and exceptional nature of the North Carolina pre-judgment attachment procedure is further evidenced by N.C.G.S. § 1–440.11 which sets forth the requirements for the affidavit necessary to secure a writ of attachment.

"§ 1–440.11. *Affidavit for attachment; amendment.*—(a) To secure an order of attachment, the plaintiff, or his agent or attorney in his behalf, must state by affidavit

(1) In every case:

a. The plaintiff has commenced or is about to commence an action, the purpose of which, in whole or in part, or in the alternative, is to secure a judgment for money, and the amount thereof,

b. The nature of such action, and

c. The ground or grounds for attachment (one or more of those stated in § 1–440.3); and

(2) In those cases described below, the additional facts indicated:

a. If the action is based on breach of contract, that the plaintiff is entitled to recover the amount for which judgment is sought over and above all counterclaims known to him;

b. If it is alleged as a ground for attachment that the defendant has done, or is about to do, any act with intent to defraud his creditors, the facts and circumstances supporting such allegation."

This requirement in subsection (2)(b) involves a stronger showing than that required by Louisiana for a writ of sequestration. In conjunction with § 1–440.3, it manifests a statutory procedure in which a pre-judgment writ will be issued in only exceptional circumstances on a rigorous showing that such circumstances exist. This confinement of the remedy is certainly an important, initial step in ensuring against wrongful or abusive use of the process by a creditor. Indeed, we have found no case in which

---

7. It is arguable that the necessity of attachment to obtain *quasi in rem* jurisdiction over a nonresident defendant has substantially diminished because of enactment of long-arm statutes making personal jurisdiction much easier to obtain. *See* N.C.G.S. § 1–75.4 et seq. However, personal jurisdiction cannot be had, even under the long-arm statute, in all cases in which *quasi in rem* jurisdiction might be available and so the attachment statute is not without significance. Section 1–75.8(4), in fact, contemplates use of the attachment remedy as a basis for the exercise of *quasi in rem* jurisdiction. *See* Koob v. Koob, 283 N.C. 129, 195 S.E.2d 552, 560–61 (1973).

8. The "extraordinary situations" referred to in *Fuentes* which justify postponing notice and hearing until after seizure of the debt-or's property are limited to circumstances involving three criteria; (1) the necessity of the seizure to secure an important governmental or public interest; (2) the need for very prompt action and (3) strict control over the process by the state. We feel that the entire North Carolina attachment statute arguably falls within these exceptions although it is debatable whether the first criteria is satisfied in light of the examples of "extraordinary situations" given in *Fuentes,* 407 U.S. at 92, 92 S.Ct. 1983. However, we do not rest our opinion on the "extraordinary situations" exception. We feel that *Mitchell* and *Di-Chem* have repudiated *Fuentes* to the extent that a new (really traditional) approach to an analysis of due process has been developed and our decision reflects this new approach.

a statute of such narrowly circumscribed dimensions has been challenged or struck down by the courts.

Moreover, the narrow nature of this statute ensures that the creditor's interests advanced or protected by this procedure are legitimate. That the creditor has a need *for immediate action* in all five circumstances in which attachment may issue cannot be questioned. The impact of these provisions are either to (1) afford the court in the main action *quasi in rem* jurisdiction so as to bring the defendants' property under the jurisdiction of the state court or (2) bring property within the custody of the court which would otherwise be unavailable for satisfaction of an ultimate judgment in a principal suit because of assignment or removal by the debtor. These two purposes unquestionably represent legitimate interests of creditors exercised in narrow, well-defined circumstances.

■ The North Carolina statute provides that the order of attachment may be issued by the clerk of the court in which the principal action has been commenced or by a judge of the appropriate trial division as specified in the statute. N.C.G.S. § 1–440.5. The plaintiff contends that the possibility of a lack of judicial supervision of the attachment process makes this an unconstitutional procedure. There is substantial support for this position in the Supreme Court cases. In *Mitchell*, only a judge could review the affidavits and issue a writ of sequestration. This provision for supervision distinguished the statute from the *Fuentes* situation in that the debtor was not "at the unsupervised mercy of the creditor and court functionaries" and, thus, the risk of a wrongful taking was lessened. Again, in *Di-Chem*, the Court pointed to the absence of judicial supervision in the garnishment process and distinguished this situation from the one in *Mitchell* in which a judge, and not the clerk of court, reviewed the application for a pre-judgment remedy.

We do not feel that the provision for issuance of the writ of attachment by the Clerk of Superior Court makes the North Carolina statute unconstitutional. The present law and practice in North Carolina courts makes it abundantly clear that the Clerk of Superior Court is a judicial officer and not a mere administrative functionary. This position is actually supported in plaintiff's brief and a close look at the attachment statute and other legislative delegations of authority to the clerk reveals that a judicial function for the clerk was contemplated by the attachment statute.

There are some early decisions of the North Carolina Supreme Court which undercut our position but we feel they no longer preclude the exercise of judicial functions by the clerk. In 1887 in Evans v. Etheridge, the North Carolina Supreme Court held that the clerk of court acts ministerially, and not judicially, in the attachment procedure. 96 N. C. 42, 1 S.E. 633 (1887). The *Evans* case, however, was decided under an old attachment statute and not N.C.G.S. § 1–440.1 et seq., passed some sixty years after that decision. We feel, in light of the clear intent of the statute here challenged and a survey of the clerk's authority in other areas, that *Evans* no longer has vitality and the judicial nature of the clerk's functions cannot be challenged.

Section 1–440.36 of the attachment statute provides that the clerk may hear the motion to dissolve the writ of attachment. This is an adversary hearing in which the clerk is to consider affidavits of both parties and must find the facts upon which his ruling is based. Additionally, the clerk may modify the order of attachment after hearing the motion on affidavits. In an analogous proceeding, the Claim and Delivery Act, the General Assembly empowered the clerk of court to order a seizure of property after conducting a hearing on the plaintiff's request. N.C.G.S. § 1–474. The statute explicitly states that the act of the clerk in issuing or refusing to issue the order is a *judicial* act. There are a number of other instances in

which the clerk has been granted judicial powers by the legislature.[9]

A closer comparison of the North Carolina attachment procedure and the other pre-judgment statutes challenged in federal courts discloses further reasons for finding that issuance of attachment by the clerk is consistent with due process. The courts in dealing with these statutes have been bothered not only because of the absence of a judicial officer but, more specifically, because the affidavit or showing as to why a writ should issue has usually been conclusory or even non-existent. Since the showing was so minimal, the issuance of a writ by a clerk on the grounds of such a showing was necessarily ministerial. The situation here is quite different. The affidavit must include specific allegations and supporting facts and the impartial evaluation of this affidavit should ensure against an arbitrary procedure whether the evaluation is made by a judge or a clerk.[10]

Section 1–440.36 provides that the defendant, whose property has been attached, may at any time move either before the clerk or judge to dissolve the order of attachment. This motion is heard in an adversary proceeding and may be determined upon affidavits filed by both parties unless a jury trial is demanded by either party.[11] The clerk or judge hearing the motion shall find the facts upon which the ruling is based and the determination is appealable. This provision certainly provides an *early* hearing at which the creditor would be required to prove the validity of the attachment. It was the absence of such a provision in the Georgia statute which troubled the Court so much in *Di-Chem*, and the presence of which in *Mitchell*, led the Court to find sufficient protection for the debtor against the error of a wrongful interim possession.

In combination with the § 1–440.11 requirement that the facts supporting the allegation of intent to defraud be stated in the affidavit, this provision for an adversary hearing to challenge the attachment affords a meaningful hearing and judicial determination of the attachment at an early stage. The hearing will necessarily be meaningful since the plaintiff's case will stand or fall on the validity of specific allegations he made in support of his affidavit.

There are other protections for the debtor in the North Carolina statute. Section 1–440.10 requires the plaintiff seeking a writ of attachment to furnish a bond in an amount "deemed necessary by the court in order to afford reasonable protection to the defendant . . ." The condition of the bond is that if the order of attachment is dis-

---

9. An examination of the role of the clerk in both the attachment statute and the claim and delivery statute manifest that the function of the clerk is judicial. *See also* N.C. G.S. § 7A–40 defining the role of the clerk in the North Carolina judicial system as follows:

"§ 7A–40. *Composition; judicial powers of clerk; statutes applicable.*—The superior court division of the General Court of Justice consists of the several superior courts of the State. The clerk of superior court in the exercise of the judicial power conferred upon him as ex officio judge of probate, and in the exercise of other judicial powers conferred upon him by law in respect of special proceedings and the administration of guardianships and trusts, is a judicial officer of the superior court division, and not a separate court.

10. There is some authority that a pre-judgment creditor's remedy may comport with due process even if the initial writ is issued, without prior notice or hearing, by a non-judicial officer clearly acting in a ministerial capacity. This is the case, it is argued, when a prompt hearing following the attachment or garnishment can be had before a judge since such a hearing arguably affords an opportunity to rectify any error in the pre-hearing issuance of the writ. *See* 419 U.S. at 611 n. 3, 92 S.Ct. at 725 n. 3. (Powell, J., concurring); Guzman v. Western State Bk., 381 F.Supp. 1262, 1266 (D.N.D.1974). Notwithstanding this sound argument, we do not waiver from our assertion that the clerk's actions in the North Carolina attachment procedure are clearly judicial.

11. See note 1, *supra*.

solved or the plaintiff fails to obtain judgment against the defendant, the plaintiff will pay all costs which may be awarded to defendant and all damages the defendant may sustain by reason of the attachment. Another protective provision in § 1–440.39 provides that a defendant whose property has been attached may discharge the attachment by giving bond for the property attached.

While we do not dispute the proposition set forth in many cases [12] that these bond and counter-bond provisions will not alone "save" a statute, they constitute further evidence that the statutory procedure under challenge is intended to protect legitimate creditor's remedies while providing the most extentive protections possible against wrongful and harmful deprivations.

Finally, we turn to the contention most vigorously asserted by the plaintiff. She contends that the decision in *Mitchell* should be confined to statutes which afford a pre-judgment remedy only to creditors holding a pre-existing interest in the property subjected to the writ. Since the North Carolina statute is available to all creditors, the plaintiff argues that notice and hearing prior to attachment is required.

There is some support for plaintiff's contention since the Court in *Mitchell* dwelled at length on the creditor's interest in the sequestered property. The interest of an installment seller in repossessing his security so as to avoid inevitable deterioration or deliberate waste by the debtor is ostensibly more substantial than that of a general creditor attaching unsecured assets of the debtor. However, we do not think that the absence of conflicting interests in the attached property automatically mandates notice and hearing prior to attachment. An examination of the *Mitchell* and *Di-Chem* cases indicates clearly that the test and analysis set forth in these cases is *not* confined to

situations in which there is a duality of interest in the attached property.

Section III of the *Mitchell* opinion makes it clear that the decision is not restricted to the specific situation in Louisiana. The Court explicitly states, without qualification, that "[w]here only property rights are involved, mere postponement of the judicial enquiry is not a denial of due process, if the opportunity given for ultimate judicial determination of liability is adequate." 416 U.S. at 611, 94 S.Ct. at 1902 (citing Phillips v. Commissioner, 283 U.S. 589, 596–97, 51 S.Ct. 608, 75 L.Ed. 1289 (1931)). In support of this proposition, the Court cites cases involving prejudgment attachment liens effected without prior notice and hearing. In these cases, the creditor had *no* property interest in the property attached; he was, as the plaintiff here, a general creditor attempting to bring property within the custody of the court ancillary to the principal lawsuit.

This interpretation of *Mitchell* is confirmed by the Court's opinion in *Di-Chem*. The Georgia statute provided the garnishment remedy to any creditor and did not restrict it to creditors with a present interest in the garnished assets. Had the Court adopted the plaintiff's view of *Mitchell*, it would have simply ruled the statute unconstitutional once it found no duality of interest in the garnished assets. However, it applied a balancing test and considered the extent to which the provisions of the statute safeguarded the debtor's rights. We have used the same approach in this case.

This analysis of the North Carolina statute manifests a compliance with procedural due process as it has been defined in *Mitchell* and *Di-Chem*. We are convinced that the statute affords the debtor the most extensive safeguards possible and minimizes both the possibility of a wrongful or arbitrary depriva-

---

12. *See, e. g.,* Gunter v. Merchants Warren Nat'l Bank, 206 F.Supp. 1083, 1088 (D.Me. 1973) ; Clement v. Four North State Street Corp., 360 F.Supp. 933, 935 (D.N.H.1973).

tion of the debtor's property interest and the harm to the debtor as a result of the ex parte issuance of the writ of attachment. At the same time, the statute protects legitimate interests of the creditors in narrowly defined situations where the absence of such a remedy would have substantial, deleterious effects on the creditor himself and the commercial credit system as a whole.

For these reasons we uphold the constitutionality of the North Carolina attachment statute.