In the Matter of McLARTY INDUSTRIES, INC., Debtor.

RENFRO CORPORATION, Plaintiff,

v.

McLARTY INDUSTRIES, INC., Defendant,

Chemical Bank, Intervenor.

Bankruptcy No. B77–160G.

United States Bankruptcy Court,
N. D. Georgia,
Gainesville Division.

Dec. 17, 1979.

Frank W. Scroggins, Atlanta, Ga., for McLarty.

Thomas M. Faw, Mt. Airy, N.C., and J. D. Smith, Jr., Gainesville, Ga., for Renfro, Inc.

## OPINION

WILLIAM L. NORTON, Jr., Bankruptcy Judge.

### I.

In early 1977, Renfro Corporation, plaintiff herein (Renfro), and McLarty Industries, Inc., defendant and debtor herein (McLarty), entered into a contract whereby McLarty agreed to purchase certain manufactured goods from Renfro. Over a period of several months a course of dealing was established between the two corporations. Subsequently, it is alleged, McLarty ceased payment on the purchased goods.

On June 22, 1977, Renfro brought an action in North Carolina Superior Court to recover money it claimed was due on the account. On the same day, Renfro instituted an attachment proceeding on McLarty's "Mt. Airy property." Pursuant to N.C.G.S. §§ 1–440.1 et seq., the prejudgment attachment was levied after Renfro had posted a $200 bond in cash, the minimum amount required by the North Carolina statute. N.C.G.S. § 1–440.10.

Several months following the attachment of its Mt. Airy property, McLarty, on December 15, 1977, filed a petition in this court for an arrangement with its creditors under Chapter XI of the Bankruptcy Act. Renfro received notice of the Bankruptcy Rule 11–44 automatic stay, enjoining the commencement or continuation of any court proceeding against the debtor.

On April 13, 1978, Renfro filed a Bankruptcy Rule 701 complaint to modify the automatic stay to allow it to proceed to judgment in the pending North Carolina case. Renfro's complaint alleged, in part, that the continuation of that action in the North Carolina court would not interfere with the rehabilitation purposes of McLarty's Chapter XI proceeding.

On January 8, 1979, Chemical Bank, the holder of a Deed of Trust on the Mt. Airy property, was granted its motion to intervene in the within proceeding so as to permit Chemical, an interested party, to contest Renfro's complaint to modify the stay. In opposition to lifting the stay, Chemical has urged this court to declare the North Carolina attachment statute unconstitutional and, thus, to find Renfro's attachment lien on McLarty's Mt. Airy property null and void. In its answer to plaintiff's complaint, defendant McLarty has asked for an identical ruling by this court.

### II.

The sole question addressed in this opinion is whether the North Carolina statute (N.C.G.S. § 1–440.1 et seq.) authorizing prejudgment attachment is unconstitutional on its face or as it was applied in the instant case.

### III.

The analysis of the constitutional issue presently before this court proceeds from a number of long-honored, time-tested judicial axioms. Foremost among these concepts is that the burden of proving the unconstitutionality of a particular statute is upon the party so alleging. Traditionally, a presumption of constitutional validity applies to state legislation in federal court proceedings and such a presumption is based upon principles of federalism and the doctrine of comity. For purposes of inquiry into constitutional issues, moreover, the action of an individual officer or agent of the State is tantamount to the action of the State itself. See e. g., Ex Parte Virginia, 100 U.S. 339, 25 L.Ed. 676 (1880). And, acts by agents of the state—being acts of the State per se —are accorded a presumption of validity without a substantial showing to the contrary. See, e. g., McDonald v. Board of Election, 394 U.S. 802, 89 S.Ct. 1404, 22 L.Ed.2d 739 (1969).

Although the declaration by any court, federal or state, of a state statute's unconstitutionality is a matter of serious

consequence, the preservation and vigilant protection by the courts of a person's constitutional rights to due process of law is of the greatest import. In this regard, it is well-settled that attachment of real property is a substantial deprivation of a significant property interest subject to the protection of the due process clause of the Fourteenth Amendment. *Hutchinson v. Bank of North Carolina*, 392 F.Supp. 888, 894 (N.D. N.C., 1975) (three judge panel); also, *see e. g., Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972). Yet, "[o]nce it is determined that due process applies, the question remains what process is due." *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972) (governmental decisions to revoke parole are subject to due process limitations).

Prejudgment and *ex parte* creditors' remedies, such as attachment or garnishment, have proved a troublesome and frequent source of constitutional litigation in recent years. *See generally, Sniadach v. Family Finance Corp.*, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969); *Fuentes v. Shevin, supra; Mitchell v. W.T. Grant Co.*, 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974); *North Georgia Finishing, Inc. v. Di-Chem, Inc.*, 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1974); *Carey v. Sugar*, 425 U.S. 73, 96 S.Ct. 1208, 47 L.Ed.2d 587 (1976). *See also Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978). Bankruptcy Courts have often addressed such constitutional issues. As Congress has reported, "[m]uch of the decisional law surrounding the requirement of the fifth amendment with respect to property rights derives from bankruptcy cases." H.R. Rep.No. 95–595 (to accompany H.R. 8200), 95th Cong., 1st Sess., p. 10 and n. 38 (1977). These challenges to the validity of provisional creditor remedies have focused upon due process notice and hearing issues, but have also entailed questions of "taking" of private property without compensation. *See, Flagg Bros., supra.*

The instant case presents this court with several issues which, in large part, pertain to procedural due process requirements. And, at the outset of this consideration, some general review on these requirements seems appropriate. As a generally applicable constitutional doctrine, the Supreme Court has stated that "[t]he fundamental requisite of due process of law is the opportunity to be heard." *Grannis v. Ordean*, 234 U.S. 385, 394, 34 S.Ct. 779, 783, 58 L.Ed. 1363 (1914). Due process is, furthermore, a flexible concept and determination of what process is due depends substantially on the nature or circumstances surrounding the particular case. *Goss v. Lopez*, 419 U.S. 565, 579, 95 S.Ct. 729, 42 L.Ed.2d 725 (1974) (notice and an informal hearing required by 10-day school suspensions). The requirements of the due process clause may be satisfied by an opportunity to be heard at a meaningful time and in a meaningful manner, not necessarily before an action authorized by law is taken. *Mitchell* and *Di-Chem, supra; Hutchinson, supra*, at 893–894. Within the context of debtor-creditor relations, in general, and with special bearing upon Bankruptcy Court litigation, in particular, the Supreme Court's "balance test" outlined in *Mitchell* and *Di-Chem* provides this court with an approach to weigh the interests of debtor, creditor and the State in reaching a determination of the constitutional question involved herein.

## IV.

The arguments made by plaintiff, Renfro, and intervenor, Chemical, have placed heavy reliance upon recent case law in the area of prejudgment attachment. Specifically, Chemical submits that *Johnson v. American Credit Company of Georgia*, 581 F.2d 526 (5th Cir. 1978), a case in which the Fifth Circuit held Georgia's prejudgment attachment statute (Ga.Code Ann. § 8–101 et seq.) unconstitutional, supports a finding, here, of unconstitutionality of North Carolina's corresponding statute. On the other hand, Renfro contends that *Hutchinson v. Bank of North Carolina*, 392 F.Supp. 888 (M.D.N.C.1975) (three judge panel), a case which upheld the constitutional validity of the particular North Carolina statute (N.C.

G.S. § 1–440.1 *et seq.*) presently in dispute herein, points to a determination of constitutionality with respect to Renfro's attachment lien.

Chemical's major argument is that, under the *Johnson* decision, due process requires that a prejudgment attachment be authorized by a judge with discretion to deny the issuance of the appropriate writ. Because as Assistant Clerk of Superior Court approved the attachment of McLarty's Mt. Airy property, Chemical submits that a due process violation occurred. Furthermore, Chemical avers, the clerk in the case at bar did not "actually" exercise any discretion when issuing the attachment order but, rather, merely followed a routine procedure of examining filled out standard forms. Upon determination that the forms required by the North Carolina statute are in proper order, the attachment law, according, to Chemical's argument, leaves virtually no amount of discretion to the issuing officer. In support of this notion, Chemical suggests a strong similarity between the Georgia statute struck down in *Johnson* and the North Carolina statute under present consideration. Under the Georgia law, when the clerk was presented with the required affidavit and bond, "it *shall* be [his] duty . . . to issue an attachment." N.C.G.S. § 1–440.12 (Chemical's emphasis)

Another argument raised by Chemical pertains to the bond and surety provisions of the North Carolina attachment statute. §§ 1–440.10 and 1–440.8. These provisions stipulate that the plaintiff in any attachment proceeding furnish a bond "as may be deemed necessary by the court in order to afford reasonable protection to the defendant, but shall not be less than two hundred dollars ($200.00)." N.C.G.S. § 1–440.10. And, the statute provides: "Any bond given pursuant to the provisions of this article shall be executed by the party required to furnish the bond and by (1) A surety company . . . or by (2) One or more individual sureties . . . ." N.C.G.S. § 1–. 440.8. Here, Renfro obtained an attachment by payment of $200.00 cash for the bond which was not executed by a surety. Thus, Chemical contends not only that de-

fendant McLarty's constitutional rights went unprotected but also that a violation of state law occurred. Chemical further maintains that a $200.00 bond on the attached Mt. Airy property, allegedly valued at between $250,000.00 and $400,000.00, is "almost ludicrous" and does not afford reasonable protection to McLarty. Finally, intervenor asserts that because the required affidavit in the attachment proceeding was not notarized, the order of attachment was improperly granted.

V.

In *Hutchinson v. Bank of North Carolina,* a three-judge panel of the United States District Court for the Middle District of North Carolina expressly upheld the constitutional validity of the statute challenged in the case at bar. 392 F.Supp. 888, 899. The *Hutchinson* court's analysis of the North Carolina prejudgment attachment statute was based upon the "balancing approach," used in the *Mitchell* and *Di-Chem, supra,* Supreme Court decisions and "under which the potential harm to the defendant debtor and the interests of the creditor are both considered in evaluating the statutory procedure." *Hutchinson,* at 894. *Hutchinson* was premised on the idea that "the overriding consideration must be whether the statute minimizes the risk that the ex parte issuance of a writ will result in a wrongful or arbitrary deprivation consistent with the protection of legitimate creditor's remedies." *Hutchinson,* at 894.

In its detail, the *Hutchinson* decision anticipated many, if not most, of the arguments presented to this court by Chemical. As Renfro has correctly pointed out, *Hutchinson* declared in unmistakable terms that for purposes of the attachment statute, as well as in other areas, "the Clerk of Superior Court [in North Carolina] is a judicial officer and not a mere administrative functionary." *Hutchinson,* at 896. The statute, itself, clearly suggests that the act of the clerk is a judicial act. N.C.G.S. § 1–440.5; *accord, Northside Properties, Inc. v. Ko-Ko Mart, Inc.,* 28 N.C.App. 532, 222 S.E.2d 267,

cert. denied, 289 N.C. 615, 223 S.E.2d 392 (1976). Such was not the case in the Georgia statutory provisions considered in *Di-Chem* and *Johnson, supra.* In addition, it should be noted that whereas in Georgia attachment and garnishment were considered as separate suits from the principal action, attachment under the North Carolina statute is defined, in part, as "a proceeding ancillary to a pending principal action;" it is not an independent suit. N.C.G.S. § 1–440.1; see also, § 1–440.21. Thus, it would seem that, by general definition, attachment in North Carolina is intended to provide for an opportunity to be heard in adversary process with judicial supervision. *Hutchinson*, at 896.

Plaintiff in *Hutchinson*, as Chemical here, contended "that the possibility of a lack of judicial supervision" by permitting a clerk of the court to issue an order of attachment was a due process violation. *Hutchinson* found otherwise. *Hutchinson*, at 896. The District Court in *Hutchinson* specifically stated that "in light of the clear intent of the statute here challenged and a survey of the clerk's authority in other areas, that *Evans* [a case decided in 1886 under an old North Carolina statute] no longer has vitality and the judicial nature of the clerk's functions cannot be challenged." *Hutchinson*, at 896.

In support of the proposition that there was a lack of judicial supervision and that there was no amount of discretion on the part of the clerk "actually used," Chemical asserts, with particular emphasis, that forms were used in the attachment procedure of this case. However, the mere assertion that forms were used is not dispositive. Forms are used in the practice of law on a daily basis and for a wide variety of purposes. Without an argument showing that the forms used in the attachment proceeding worked in some specific way to the detriment of defendant McLarty and as a denial of due process, this court cannot find an unconstitutional violation. Without particular facts clearly and convincingly indicating that the clerk of the instant case did not actually use discretion—assuming *arguendo* such is required for that stage of

the proceedings—this court must follow constitutional doctrine that accords a presumption of validity to a state statute and to the acts of an agent of the state. Also, it is important to note that the North Carolina statute requires specific matters to be set out in affidavit or verified complaint prior to the issuance of the Order of Attachment. N.C.G.S. §§ 1–440.3, 1–440.5, 1–440.11(b). Some of these matters are already printed on the standard forms which were used in the McLarty proceeding. Presumably, inclusion of the aforementioned matters, required by statute, not only serves a purpose of judicial and administrative economy but also tends to protect the rights of parties in dispute. This court has been given no reason to conclude that the forms in the case at bar did not serve to expedite the proceedings and to enhance the need to protect legitimate interests concerned.

From examination of *Hutchinson* and its Supreme Court foundation cases (i. e. *Mitchell* and *Di-Chem, supra* ), it becomes evident that, for purposes of determining the constitutional validity of attachment and similar statutes, judicial consideration not only hinges upon the circumstances of the particular case and statute involved therein, but also pivots on a finding of whether the particular statute contains efficient "procedural safeguards" or "saving characteristics" so as to not do violence to a person's rights to due process of law. *Hutchinson*, at 894. To some degree, present constitutional doctrine establishes that, in determining what process is due, no single factor alone should prove decisive. Rather, each aspect of the relevant statute together with the facts of the given case, comprise factors to be weighed "in determining the appropriate form" of due process. *Goss v. Lopez, supra*, 419 U.S. at 576, 95 S.Ct. 729; *Mitchell, supra*, 416 U.S. at 606–609, 94 S.Ct. 1895.

A large part of the *Hutchinson* court's inquiry examined the procedural safeguards contained in the North Carolina attachment law. Signal among these is that part of the statute which provides for an early adver-

sary hearing after seizure and which offers the opportunity for jury trial upon demand of either defendant or plaintiff. N.C.G.S. § 1–440.36. Under § 1–440.36(a), "a defendant whose property has been attached may specially or generally appear and move . . . to dissolve the order of attachment." Also, under § 1–440.37, a defendant may apply for modification of the attachment order. Decisions to dissolve or modify an attachment order may be appealed. N.C.G.S. § 1–440.38. These provisions, generally, indicate ample procedural safeguards affording due process of law. That an early hearing after issuance of an attachment order may be had was of the utmost importance to the *Hutchinson* court, *supra*, at 894. Also, provision for an early hearing (i. e., hearing at a meaningful time and in a meaningful manner) was perhaps the most important of the "saving characteristics" of the statute in *Mitchell*; as distinguished from *Di-Chem*, in which the Georgia statute therein notably lacked such provision. See discussion in *Hutchinson*, *supra*, at 893–894.

Because Chemical, by virtue of its holding of a Deed of Trust on the Mt. Airy property, is intervenor, not defendant in this proceeding, it should be noted that under North Carolina law motions to dissolve and modify attachment orders are not limited to defendants. Section 1–440.43 provides:

Any person other than the defendant who claims property which has been attached, or any person who has acquired a lien upon or an interest in such property, whether such lien or interest is acquired prior to or subsequent to the attachment, may

(1) Apply to the court to have the attachment order dissolved or modified, or to have the bond increased, upon the same conditions and by the same methods as are available to the defendant . . .

## V.

◼ The alleged insufficiency of the affidavit, the impropriety of the bond furnished in the case at hand and the omission of a surety's execution of said bond implicate constitutional questions, as well as issues of North Carolina law. With respect to Chemical's allegation that a violation of North Carolina law has occurred because the affidavit was not notarized and the bond was not executed by a surety, this court cannot agree for a number of reasons. First, according to North Carolina law, § 1–440.-11(b); "A verified complaint may be used as the affidavit required by this section" of the attachment statute. Secondly, as Renfro has pointed out, "N.C.G.S. § 109–32 specifically provides that a deposit in cash may be made in lieu of any written undertaking or bond required in any North Carolina court." Two hundred dollars in cash was supplied by Renfro in place of a written undertaking or surety bond. Thirdly, the North Carolina attachment statute gives "any defendant whose property has been attached" an option of discharging the attachment "upon his giving bond for the property attached" and, also, permits a defendant "[a]t any time before judgment in the principal action" to object to or seek an increase in the bond previously furnished by a plaintiff. N.C.G.S. §§ 1–440.39 and 1–440.40. In this court's view, both the aforesaid sections constitute further procedural safeguards in the presently challenged statute.

These, as a matter of North Carolina law, the use of a verified complaint in lieu of an affidavit and the giving of cash in lieu of a surety bond compel a finding that the attachment on McLarty's Mt. Airy property is valid. As a practical matter, the furnishing in cash of the full amount of the bond, however small in sum, seems by definition and by logic to render the entire purpose of the surety requirement negatory.

◼ As a matter of constitutional law, Chemical's allegation that the $200 bond did not sufficiently and reasonably protect defendant McLarty's interests is without merit. The amount of the bond was the minimum required by the North Carolina law and was fixed by the clerk, whose acts have been presumed constitutionally valid. Given the ample "saving characteristic" of this statute (*i. e.*, the opportunities to modify,

dissolve or discharge the attachment or to increase the bond amount, for prompt post-seizure hearing, for jury trial upon request, for appeals and for third-party intervention), due process requirements and "reasonable protection" requirements (N.C.G.S. § 1–440.10) were adequately met in this case. *See also, e. g., Palmer v. M.R.S. Development Corp.*, 9 N.C.App. 668, 177 S.E.2d 328 (1970).

The records and evidence of the instant case indicate that neither Defendant McLarty nor Intervenor Chemical took advantage of any of the plentiful procedural safeguards available in the North Carolina statute, N.C.G.S. §§ 1–440.1 *et seq.* Manifestly, it would be unfair and inequitable to Plaintiff Renfro for this court to now declare unconstitutional an attachment, duly and lawfully levied, when defendant has not seen fit apparently to challenge or to seek amendment to the attachment on its property; that is, no challenge prior to this proceeding. The attempt at remedy in a timely manner and fashion and in an appropriate forum is peculiarly absent in this case. It seems abundantly clear that McLarty did fail to exercise its statutory rights under North Carolina law.

### VI.

█ Two final points raised in the case at hand may be discussed briefly. First, Chemical's argument, that, prior to the attachment obtained on the Mt. Airy property, Renfro had no interest in that property and, thus, the attachment was unjust and violative of McLarty's due process rights, lacks merit. The *Hutchinson* court stated that "we do not think that the absence of conflicting interests in the attached property automatically mandates notice and hearing prior to attachment. An examination of the *Mitchell* and *Di-Chem* cases indicates clearly that the test and analysis set forth in these cases is not confined to situations in which there is a duality of interest in the attached property." *Hutchinson, supra,* at 898. *Mitchell, Di-Chem* and *Hutchinson,* stand, in other words, as direct authority against Chemical's assertion that, because

Renfro is allegedly an unsecured creditor, a test for due process different from the balancing approach used in those cases is called for in the instant case.

█ Secondly, it is necessary to add that this court, like the *Hutchinson* court, does not rest its decision upon the "extraordinary situations" analysis formulated in *Fuentes, supra,* 407 U.S. at 90–92, 92 S.Ct. 1983. *Hutchinson, supra,* at 895, n. 8. In *Fuentes,* the court explained that seizure of property without opportunity for a prior hearing was permissible in only a few, limited "extraordinary situations"; namely, (1) where an important government or public interest was at stake, or (2) where there was "a special need for very prompt action," or (3) where "the State has kept strict control over its monopoly of legitimate force." *Fuentes, supra,* at 91, 92 S.Ct. at 2000. Although this court is of the opinion that were the *Fuentes* analysis to rightly apply here, plaintiff's attachment would nonetheless be valid. This court is in accord with the *Hutchinson* court's view that Mitchell and Di-Chem "repudiated *Fuentes* to the extent that a new (really traditional) approach to an analysis of due process has been developed and our decision reflects this new approach." *Hutchinson, supra,* at 895, n. 8. Simply put, the question in this approach is whether the statute on its face or as applied sufficiently protects both the debtor's interests in not being wrongfully or arbitrarily deprived of a property interest and the interests of a creditor seeking remedy in a court of law.

### VII.

Based upon a consideration of the facts of this case and upon an examination of statutory and case law relevant to this proceeding, it is the conclusion herein that no constitutional violation occurred in the attachment of McLarty's Mt. Airy property. With respect to the facial challenge against the constitutionality of North Carolina's attachment statute, §§ 1–440.1, *et seq.,* this court finds *Hutchinson* to be controlling authority in the case at bar. With regards to the challenge against the statute as it

was applied in the North Carolina attaching proceeding, this court has not been presented with an argument of sufficient weight to overcome the presumption of constitutional validity appropriately given to the statute as well as to the acts of agents of the state. This court holds that the North Carolina statute (N.C.G.S. §§ 1–440.1, et seq.) authorizing prejudgment attachment is constitutional on its face and as it was applied in the instant case.

### VIII.

Pursuant to this court's pretrial order, dated April 18, 1979, this adversary proceeding will be set down for trial, at which time this court will hear evidence on all issues specified in Paragraph 2 of said pretrial order.

Said pretrial order is incorporated herein by reference. A copy of said pretrial order is attached hereto.

A separate order setting the date for trial will be entered.