Buradus *v.* General Cement Products Co.
et al., Appellants.

Argued April 10, 1946. Before BALDRIGE, P. J.,
RHODES, HIRT, RENO, DITHRICH, ROSS and ARNOLD, JJ.

*Arthur M. Grossman,* for appellants.

*Samuel J. Goldstein,* for appellee.

OPINION BY HIRT, J., October 1, 1946:

It was admitted that Edward Buradus died on April 5, 1943 from injury in the course of his employment with General Cement Products Company. Claimant in this case asserted that she was his common-law wife, and as such, was entitled to compensation. Her testimony was to this effect: After an acquaintance of three weeks, she agreed to marry Buradus. On November 16, 1941 she went to the house of John Powell, where Buradus roomed, and there in the presence of Powell and his wife, in words of the present, took him for her lawful husband and he, her, as his wife. Both Powell and his wife, as witnesses for claimant, recounted what was said by the parties on entering into the marriage contract. In formal respects the testimony of claimant and these witnesses met legal requirements in almost the exact language of our decisions. Claimant testified that she then went with Buradus to his room and that she continued to live with him there and was supported by him, up to the time of his death. Both the referee and the board accepted this testimony and found that claimant had met the burden of establishing a common-law marriage with Buradus. The board, however, considered itself bound by our dicta in *Fisher v. Sweet & McClain,* 154 Pa. Superior Ct. 216, 35 A. 2d 756, and on that ground alone refused an award. Following our order, affirming the judgment in that case, we, on January 27, 1944, gave notice of a prospective change in our construction of the Act of May 17, 1939, P. L. 148, in this language: ". . . that a valid common-law marriage cannot *hereafter* be entered into in this commonwealth without first complying with the Act of 1939 and securing a marriage license pursuant to its provisions." There was no license to marry in the present case. But

since the marriage contract, found by the board, was entered into *before* the date of our opinion in the *Fisher* case, the lower court held that the marriage was not invalidated thereby and entered judgment for claimant as on an award.

There has been a growing judicial impatience of the invitation to perjury in cases depending for recovery on marriage at common law and a progressive change in judicial view requiring higher degrees of proof where such marriages are asserted. In the Orphans' Court the proofs of a common-law marriage must be sufficient in substance and credibility to convince the mind and satisfy the conscience of a chancellor, whose findings become final when approved by a court en banc. *Krystkiewicz's Estate*, 310 Pa. 298, 165 A. 230. In workmen's compensation cases there must be substantial credible and competent testimony sufficient to satisfy a reasonable mind as adequate proof of a marriage at common law. *Wilbert v. Com. Sec. Reserve Acc.*, 143 Pa. Superior Ct. 37, 17 A. 2d 732. But it is still not difficult for unprincipled claimants to convert illicit relationships into honest marriages, to their advantage, on spurious claims for workmen's compensation or against the estate of a decedent. In the present case, however, with the question of credibility of the witnesses resolved in favor of claimant, there is evidence sufficient to support the finding of a common-law marriage and we may not interfere with that finding, judicially. *Kiska v. C. H. Ziegenfuss Co., Inc.*, 154 Pa. Superior Ct. 100, 35 A. 2d 532. But this claim is not atypical and is not above suspicion. Claimant at the time of the alleged marriage was but little more than sixteen years old, although she said that her father consented to the marriage. She had an illigitimate child by a former alliance. In defendant's testimony, Buradus was described as a police character; he was frequently in conflict with the law, and, after the marriage, admittedly served time in the Allegheny County Work House on a con-

viction of larceny. He had left claimant in Pittsburgh, on another occasion after the marriage, and spent six months in Cleveland and Detroit. There is credible evidence also that he lived with two other women, in succession in meretricious relationship after the marriage with claimant and that he was not living with her at the time of his death.

Marriage without civil or religious ceremony (perhaps mistakenly accepted here, as the then common law of England, Cf. Bishop on Marriage, Divorce and Separation, §390 et seq., In re: *Roberts' Estate* (Wyo.) 133 P. 2d 492) is still valid, under the common law of Pennsylvania. And although, with the ready means of transportation everywhere available, common-law marriage may be an anachronism in the present day—born as it was of the exigencies of pioneer life—we have not presumed to question it as an institution sanctioned by our law. The question here is whether we may give effect to our dicta in the *Fisher* case and declare claimant's marriage void for want of a license in accordance with the Act of 1939.

It well may be questioned that we, on a change of view in the construction of an act of assembly, have the power to limit the application of the revised construction to conduct occurring thereafter. In general, the construction placed upon a statute by the courts becomes a part of the act, *from the very beginning.* And when former decisions are overruled, the reconsidered pronouncement becomes the law of the statute from the date of its enactment. *People ex rel. Rice v. Graves,* 273 N.Y.S. 582, affirmed in 270 N.Y. 498, 200 N.E. 288, certiorari denied, 298 U. S. 683; *Philadelphia v. Schaller,* 148 Pa. Superior Ct. 276, 25 A. 2d 406, allocatur refused, certiorari denied 63 S. Ct. 43, 317 U.S. 649. Cf. Crawford Statutory Construction, §184.

On any view, this is not a proper case in which to give effect to our dicta in the *Fisher* case since the parties were married before the date of the decision. What

we there said was but notice of a prospective change in the law. By our language, limiting its intended application to common-law marriages contracted after the date of our opinion, claimant would have been justified in the belief that any contemplated change in legal construction would not affect her marital status nor require a subsequent marriage, duly licensed, to make it valid. We are not justified in now saying that her position of security, whether or not she did in fact rely on our language, was false. Although we well might direct the entry of an award on that ground, as did the lower court, frankness compels us to say that we, on re-examination of the question, have found our declaration in the *Fisher* case, untenable.

Our addendum to the *Fisher* case was pure dicta; the question of the general application of the 1939 act as a health measure was not involved and was not raised nor argued in that appeal. Because not necessary to the determination of that case our contemplated change in construction of the 1939 act did not become presently effective and did not work a change in the law, under the doctrine of stare decisis.

The incidents of a common-law marriage always have been, marriage, contracted without civil or religious ceremony, and without prior license (Freedman on Marriage and Divorce, §§48, 49) and until the *Fisher* case, our appellate courts have tacitly held that no statutes affect either the method of contracting a common-law marriage or its validity. The provision of the Act of June 23, 1885, P. L. 146, 48 PS 2, that "no person within this commonwealth shall be joined in marriage, until a license shall have been obtained for that purpose," relates solely to civil and religious ceremonial marriages and marriages solemnized in writing by the parties themselves under §4 of the act. 48 PS 7. Common-law marriage was not affected by that act or its amendments. The 1939 act, requiring a serological test for syphilis, was also a marriage license regulation, though in the

interest of public health. It is significant that the act does not refer to common-law marriages specifically. It therefore may not be presumed to make any change in the common law. Even though the expression of an act is in general terms, only such modification will be recognized as the statute clearly and definitely prescribes. In the absence of express declaration, the law presumes that the act did not intend to make any change in the common law, for if the legislature had that design they would have expressed it.[1] *Pettit v. Fretz's Executor*, 33 Pa. 118. Bishop on Marriage, Divorce and Separation, §424, is authority for the statement that a common-law marriage is valid notwithstanding a statute, unless the statute contains express words of nullity. Cf. 57 L.R.A. (N.S.) 19; 39 A.L.R. 538.

Moreover the history of the act indicates that the legislature did not actually intend to include common-law marriage within its purview. Earlier in the session of 1939, an act, identical in material respects, was passed by both houses. Governor James vetoed the measure on the ground that it made no reference to common-law marriage, as well as because of defects in the prescribed procedure on summary conviction for violation of the act. In a redraft, the suggested changes of procedure were made but the language of the prior bill was not modified in other respects, in the act which became the law on May 17, 1939. There was no discussion on the floor of either the Senate or the House during its passage. By ignoring the suggestion of the governor, no inference is possible other than that the legislature

---

[1] This rule of statutory interpretation has been widely adopted, 3 Sutherland Statutory Construction, 3rd Ed., §6201. It has been applied without exception in Pennsylvania. *Minkin v. Minkin*, 336 Pa. 49, 7 A. 2d 461; *Heaney v. Boro. of Mauch Chunk*, 322 Pa. 487, 185 A. 732; *Locust-Broad (No. 1)-Eighth Subway Case*, 319 Pa. 161, 179 A. 741; *Bridgeford v. Groh*, 306 Pa. 566, 160 A. 451; *Merrick v. DuPont et al.*, 285 Pa. 368, 132 A. 181; *Wilson v. Wilson*, 126 Pa. Superior Ct. 423, 191 A. 666; *Keim v. City of Reading*, 32 Pa. Superior Ct. 613; Endlich on Interpretation of Statutes, §127.

deliberately refused to make any change in the law of common-law marriage in that act. In 1943 the legislature had before it a suggested revised marriage code which proposed specifically to abolish common-law marriage. The provisions of the 1939 act were incorporated in it. Though passed by the House, it never reached the floor of the Senate. That proposed act is of no significance except to demonstrate that the legislature again had the question of common-law marriage before it for consideration and did not see fit to make any change in the existing law. On March 9, 1945 (P. L. 41) the legislature reenacted the 1939 act without material changes in language. Later in the same session it incorporated the same provisions, almost verbatim, in an "Act for the prevention of venereal diseases". This Act of May 16, 1945, P. L. 577, 35 PS 587.6 repealed the 1939 act as well as the prior 1945 act. There is no presumption, in the absence of a change in language, of a legislative change of intent in the Act of May 16, 1945, to require license as a prerequisite to a valid common-law marriage. The inference is inescapable that the legislature with our suggested change before it, chose to leave the law as it was.

Because of our high respect for the wisdom of our late President Judge, in his development of the law and its practical application, we have stated these conclusions with much reluctance. Our experience with cases such as this has been unsatisfactory and we are in agreement that some badge of integrity should be required by law to identify the rarely actual common-law marriage and distinguish it from the spurious; thus, removing the temptation from finders of facts of rewarding "imposture by fiction". But whether the suggestion of the *Fisher* case is to be given effect will be exclusively for the legislature to determine.

On amendment, by substituting General Cement Products Company as defendant employer (in accordance with agreement of counsel) the judgment is affirmed.