NORTHSIDE PROPERTIES, INC. v. KO-KO MART, INC. AND GERALD E. STEPHEN

No. 751SC753

(Filed 18 February 1976)

1. **Rules of Civil Procedure § 15— motion to amend answer — counterclaims not compulsory — motion properly denied**
   The trial court did not err in denying defendants' motion to amend their answer to include certain counterclaims where the court determined that the counterclaims were not compulsory and that they constituted proper subject matter to be heard in another action by defendants against plaintiff which was then pending. G.S. 1A-1, Rule 15(a).

2. **Uniform Commercial Code § 76— promissory note — insurance check for damage to collateral — transfer of collateral — no impairment of collateral**
   In an action to recover on a promissory note which was executed by defendants to Peoples Bank and Trust Company and which the bank sold to plaintiff, defendants' answer and affidavit were insufficient to raise issues of fact with respect to impairment of collateral by the bank, though the bank required defendants to turn over to the bank for application on the note the proceeds of an insurance check

Properties, Inc. v. Ko-Ko Mart, Inc.

issued for damages to machinery rather than allowing defendants to use the proceeds to repair the machinery and though the bank refused to allow defendants to sell a part of the equipment, since the bank, relying on G.S. 25-9-306(2), had a right to require the proceeds of the insurance check to be applied to the amount due, and since the security agreement provided that defendants could not transfer the collateral.

3. **Attachment § 1— constitutionality of statute — no requirement of notice and hearing**

The N. C. attachment statute, G.S. 1-440.1 *et seq.*, is not unconstitutional and does not require notice and an opportunity of hearing prior to attachment.

4. **Attachment § 1— plaintiff entitled to attachment — sufficiency of answer to raise question**

In an action on a promissory note where plaintiff's affidavit in attachment stated that the grounds were that defendants, with intent to defraud their creditors, had, or were about to, dispose of or secrete the property, and defendants' inartfully drawn answer denied all "allegations of fraud in any manner" and averred that the process was not being handled by due process of law, the answer was sufficient to raise the question of whether plaintiff was entitled to attachment.

APPEAL by defendants from *Cowper, Judge.* Judgment entered 2 April 1975 in Superior Court, CHOWAN County. Heard in the Court of Appeals 15 January 1976.

On 12 December 1972, plaintiff filed its complaint seeking judgment for $38,472.38, "reasonable attorneys fees of 15% of said amount," and for costs. It alleged that on or about 4 October 1971, defendants executed a promissory note and security agreement obligating defendants to pay to Peoples Bank & Trust Company the sum of $44,884.56 in 84 consecutive monthly installments of $534.34; that plaintiff is assignee of the note and security agreement; that the loan was made to allow defendants to purchase the personal property described in the security agreement; that Peoples Bank & Trust Company perfected the security interest on 8 October 1971, by filing a financing statement in the office of the Register of Deeds of Chowan County; that defendants are in default and have been since 20 October 1972.

On the same day, plaintiff filed an affidavit in attachment averring that defendants, with intent to defraud their creditors, have "assigned, disposed of, or secreted, or is about to assign, dispose of, or secrete, property." Plaintiff filed a bond and obtained an order of attachment, and the sheriff levied on the

"entire stock and contents of KO-KO Mart, Inc. of Northside Shopping Center, Edenton, N. C."

On 26 January 1973, the individual defendant filed a handwritten answer in which he referred to a civil action No. 72CvD285. Although the answer is not artfully drawn, it does aver that defendants negotiated with Koretizing Corporation with the view of defendants' obtaining a koretizing franchise for a $20,000 franchise fee and with Koretizing as an endorser on a $40,000 note to Peoples Bank & Trust Company for the purchase of equipment. Negotiations also were had with Townson Lumber Company for the lease of a store building in Edenton with defendants as sublessees. Defendants entered into possession of a building in Northside Shopping Center, known as Koretizing Dry Cleaning and Laundromat. In September of 1971, the bank, plaintiff and defendants were informed that Koretizing had been sold and the corporation would be dissolved. Defendants aver that having lost the benefits as a franchisee, and the endorsement on the note, they contacted the Small Business Administration and, as a result of negotiations with the bank, the note was extended over seven years; that plaintiff was contacted in an effort to obtain relief from the existing high rent but plaintiff refused to reduce the rent; that plaintiff did agree to temporary relief by placing two months rent on the end of the original five-year lease; that lessor (which by then was Northside Properties, Inc. rather than Townson Lumber Company) subsequently threatened eviction unless default in rent was taken care of; that defendants requested a new lease but were refused; that plaintiff continuously harassed defendants and continuously informed the bank of its intention to sue "thereby forcing defendants' note to be highly insecure"; that in October 1972, defendants informed the bank that they no longer needed certain equipment and wished to sell it to apply on the note; that "by this act approximately $8,000 would be deducted from the note, placing the firm one year ahead on payments"; that defendants also informed plaintiff and the bank that they were going to place various amusement machines in the business on a 50% consignment basis; that plaintiff demanded that the machines be removed; that the bank advised that it would consider the sale of the machinery; that "with this litigation maneuvers, Peoples Bank and Trust were placed under heavy duress and with the note not having the policy of endorsement plus the plaintiffs refusal to grant the defendants a reasonable and feasible lease, they could see no alternative except

to place this note on the selling block"; that defendants deny any fraud; that they were not told of plaintiff's acquiring the note; that plaintiff is attempting to secure defendants' total assets of over $64,000 "of which over 50% of the original costs have been paid"; that defendants were not given a hearing prior to the "firms doors being locked"; that defendants were not allowed to witness. the actual count of monies collected from vendors; that defendants' mobile home, shown as collateral on the face of the note, was transferred and retained by an employee of the bank and defendants had paid 50% of the cost of the home.

On 9 March 1973, plaintiff moved to strike all of the answer except the averment as to residence of the parties, ·as being irrelevant and immaterial to the matters alleged in the complaint and as presenting an insufficient defense. Plaintiff also moved for judgment on the pleadings and for summary judgment.

On 9 April 1973, defendants filed a document entitled "Request for Hearing on Motion to Strike by a Federal Judge or Court."

On 14 June 1973 defendants filed a document entitled "Request Notice of Public Sale be Enjoined on 14th June, 1973." On 17 July 1973, defendants filed a document entitled "Motion to Move File No. 72CvS286 to the Federal Courts and Request for Punity (sic) Damages," and on 25 July 1973, they filed a document entitled "Request for Release of Daily Cash Receipts, Business Records and Written Summary of Various Monies Confiscated and Collected After Unauthorized Seizure."

On 25 October 1973, plaintiff again moved for summary judgment and for judgment on the pleadings.

On 9 August 1974, defendants, through counsel, moved to be allowed to amend their answer. The motion stated, inter alia, that "Since defendants are without legal training these answers do not conform to standard legal practice; however, though the answers were not artistically drawn, they did set forth defendants' basic claims." The proposed answer was attached to the motion. It admitted the execution of the note and denied all other allegations. As counterclaim, it averred that defendants had no notice of the attachment; that the sale of the defendants' property without judicial order or other authorization was

in violation of law and defendants are entitled to $40,000 compensatory damages and $200,000 punitive damages; that plaintiff bought the property and began to operate a business using the Koretizing sign to which it was not entitled and defendants are entitled to $25,000 damages therefor; that the building leased to defendants by plaintiff was not in good condition and tar on the roof leaked through causing damages to machinery and clothing of customers causing loss of business and damages in amount of $25,000; that the electrical wiring was exposed and necessitated repair which plaintiff refused to have repaired and that defendants had to have it done and that because of damages to their machinery they were entitled to $15,000 in damages; that plaintiff had committed an unfair or deceptive act or practice in the conduct of its trade or business entitling defendants to $200,000 in damages.

Defendants then moved for consolidation for trial of this action and No. 74CvS206 for that both concerned common questions of fact and law.

On 4 November 1974 plaintiff filed an affidavit in support of its motion for summary judgment. The affidavit was given by W. D. Townson, Jr., President of plaintiff. The affidavit stated that defendants, during 1971 and 1972, were lessees of space in Northside Shopping Center for the operation of a dry cleaning business; that beginning in the latter part of 1971 they were continuously in arrears in rent and that in December of 1972, they were in arrears in the amount of $1882.13; that on 12 December 1972, plaintiff terminated the lease and instituted an action for the arrearage; that prior to that time defendants were in default on an obligation to Peoples Bank & Trust Company which was in the initial amount of $44,884.56; that defendants had assigned their interest in certain equipment used in the operation of their business as security for the loan under a security agreement of even date with the note; that on 11 December 1972, plaintiff purchased the note from the bank and took an assignment of the security agreement; that on 12 December 1972 plaintiff instituted another action against defendants for the past due balance on the note in the amount of $38,472.38; that plaintiff was informed and believed that defendants were about to dispose of the property subject to the security agreement with intent to defraud plaintiff and, through counsel, filed an affidavit in attachment; that on 12 December 1972 an order of attachment issued, and the sheriff

Properties, Inc. v. Ko-Ko Mart, Inc.

levied on the property on the same date; that the note continued in default and, rather than resorting to a sale under attachment, plaintiff exercised a general power of sale contained in the assigned security agreement, "which was superior in lien to the attachment, gave notice of public sale, and caused the collateral to be sold on June 14, 1973"; that plaintiff was the purchaser at the sale for the amount of $13,999.80; that the proceeds of sale were applied to the unpaid balance and accumulated interest on the assigned note; that the balance on the notes and accumulated interest remain unpaid.

The record contains an affidavit of the individual defendant indicating it was sworn to on the 27th day of March, 1975. It bears no filing date. This affidavit reiterates the averments of the proposed amended answer. Although the record does not indicate that the affidavit was filed, counsel for the parties agreed on oral argument that the court did consider the affidavit.

On 2 April 1975, Judge Cowper entered an order reciting that the matter was heard on "defendants' Motion to Amend Answer and plaintiff's Motion for Summary Judgment and upon consideration of the record and parties respective affidavits and brief of counsel." The court denied defendants' motion to amend answer and granted plaintiff's motion for summary judgment. The court further found that the counterclaims "raised herein and which defendants have sought to raise in their motion to amend answer" are not compulsory counterclaims and constitute proper subject matter to be heard in "another action now pending in this court, to wit: *Gerald E. Stephen and Ko-Ko Mart, Inc. v. Northside Properties, Inc.*, et al. (74-CVS-206)." Defendants appealed from the entry of the judgment.

*Wolff, Harrell and Mann, by Andrew S. Martin, for plaintiff appellee.*

*Smith, Patterson, Follin, Curtis & James, by J. David James, for defendant appellants.*

MORRIS, Judge.

[1] Defendants first contend that the court erred when it denied their motion to amend their answer.

Amendments to pleadings are governed by G.S. 1A-1, Rule 15(a):

"A party may amend his pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, he may so amend it at any time within 30 days after it is served. Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires. A party shall plead in response to an amended pleading within 30 days after service of the amended pleading, unless the court otherwise orders."

In this case, defendants were entitled to amend their answer only by leave of court. The motion to amend was addressed to Judge Cowper's discretion, "to be exercised as justice requires 'in view of the attendant circumstances' ". *Calloway v. Motor Co.*, 281 N.C. 496, 501, 189 S.E. 2d 484 (1972). (Citation omitted.)

Here the court considered the attendant circumstances. He had before him the proposed amendment, the original answer, the affidavit of the individual defendant which reiterated the averments contained in the original and proposed amended answer, and was obviously aware of a suit brought by defendants against plaintiff based upon the identical claims sought to be incorporated by answer in this suit. The court properly held that the counterclaims were not compulsory counterclaims and noted in his judgment that they constituted proper subject matter to be heard in the other action then pending, to wit: *Gerald E. Stephen and Ko-Ko Mart, Inc. v. Northside Properties, Inc.,* et al.

An order denying a motion to amend pleadings is an interlocutory order. We are unable to see anything in this record which would require review of the court's denial. Certainly there is no abuse of discretion, nor have defendants been deprived of a substantial right. This assignment of error is overruled.

[2] Defendants contend that even though the proposed amendment be not allowed, the original answer and affidavit of the individual defendant raise issues of fact with respect to impairment of collateral by the bank. First defendants take the posi-

Properties, Inc. v. Ko-Ko Mart, Inc.

tion that the bank had no right to require defendants to turn over to the bank for application on the note the proceeds of a check issued for damages to machinery rather than allowing defendants to use the proceeds to repair the machinery. This was raised by the affidavit appearing in the record but bearing no filing date. G.S. 25-9-306(2) provides that a " . . . security interest continues in collateral notwithstanding sale, exchange or other disposition thereof by the debtor unless his action was authorized by the secured party in the security agreement or otherwise, and also continues in any identifiable proceeds including collections received by the debtor." It seems clear that the bank had a right to require the proceeds of the insurance check to be applied to the amount due. Defendants also take the position that the bank impaired the collateral when it refused to allow them to sell a part of the equipment. The security agreement provides that "Debtor is not to, and will not attempt to, transfer . . . the collateral." Any sale or transfer of collateral would have to be with the bank's consent. The decision must be the creditor's, applying its own business judgment. The risk is the bank's and its decision either way would not constitute an impairment of collateral.

[3, 4]   We agree that the original answer is sufficient to aver that defendants had no notice or opportunity to be heard prior to the attachment. Although the answer is very inartfully drawn, we are of the opinion that it also raises the question of whether plaintiff was entitled to attachment. The answer denies all "allegations of fraud in any manner" and avers that "this process is not being handled by due process of law." The complaint contains no allegations of fraud. The affidavit in attachment does, however, state that the grounds are that defendants, with intent to defraud their creditors, have, or are about to, assign, dispose of or secrete the property. In *North Georgia Finishing v. Di-Chem*, 419 U.S. 601, 42 L.Ed. 2d 751, 95 S.Ct. 719 (1975), the Court, in a five-to-three decision, held the Georgia statutes under which plaintiff had garnished defendant's bank account unconstitutional. The Court reviewed *Fuentes v. Shevin*, 407 U.S. 67, 32 L.Ed. 2d 556, 92 S.Ct. 1983 (1972), and *Mitchell v. W. T. Grant Co.*, 416 U.S. 600, 40 L.Ed. 2d 406, 94 S.Ct. 1895 (1974). In *Fuentes* the Court held that the Florida and Pennsylvania replevin statutes were in violation of the Fourteenth Amendment, because seizure of the property could be had without notice and without the opportunity of a hearing or other safeguard against mistaken repossession. In

*Mitchell,* the Court upheld the Louisiana sequestration statute which permits the seller creditor holding a vendor's lien to secure a writ of sequestration and, having filed a bond, to cause the sheriff to take possession of the property. However, the writ was issuable only by a judge and upon an affidavit which must set out facts entitling the creditor to sequestration as opposed to mere conclusory allegations. The debtor is also entitled to an immediate hearing after seizure and to dissolution of the writ if creditor is not able to prove the grounds on which the writ was issued. However, the Court said the Georgia statute was vulnerable for some of the reasons the Florida and Pennsylvania replevin statutes were invalid and did not have the saving characteristics of the Louisiana statute. The Georgia statute provided that the clerk, without participation of a judge, could issue the order upon the affidavit of the creditor or his attorney and need contain only conclusory allegations. The Court said:

> "There is no provision for an early hearing at which the creditor would be required to demonstrate at least probable cause for the garnishment. Indeed, it would appear that without the filing of a bond the defendant debtor's challenge to the garnishment will not be entertained, whatever the grounds may be." *North Georgia Finishing v. Di-Chem,* 42 L.Ed. 2d 751, at 757-758.

In his concurring opinion Mr. Justice Powell said:

> "In my view, procedural due process would be satisfied where state law requires that the garnishment be preceded by the garnishor's provision of adequate security and by his establishment before a neutral officer of a factual basis of the need to resort to the remedy as a means of preventing removal or dissipation of assets required to satisfy the claim. Due process further requires that the State afford an opportunity for a prompt post-garnishment judicial hearing in which the garnishor has the burden of showing probable cause to believe there is a need to continue the garnishment for a sufficient period of time to allow proof and satisfaction of the alleged debt. Since the garnished assets may bear no relation to the controversy giving rise to the alleged debt, the State also should provide the debtor an opportunity to free those assets by posting adequate security in their place." *Id.* at 760.

We are of the opinion that our attachment statute meets the tests set out by Mr. Justice Powell and does not suffer

the disability of the Florida, Pennsylvania and Georgia statutes held invalid. The order of attachment may be issued by the clerk of the superior court in which the main action has been commenced or by a judge of the appropriate trial division. G.S. 1-440.5. The issuance of the order by the clerk is consistent with due process since the clerk is a judicial officer and not a mere administrative functionary. *Hutchinson v. Bank of North Carolina*, 392 F. Supp. 888 (M.D.N.C. 1975). The order may be issued upon the affidavit of the plaintiff, or his agent or attorney in his behalf. The affidavit must contain a statement that plaintiff has instituted or is about to institute an action for a money judgment and the amount thereof, the nature of the action, and the grounds for attachment. G.S. 1-440.11. The grounds for attachment are set forth in G.S. 1-440.3 as follows:

" . . . when the defendant is

(1) A nonresident, or

(2) A foreign corporation, or

(3) A domestic corporation, whose president, vice-president, secretary or treasurer cannot be found in the State after due diligence, or

(4) A resident of the State who, with intent to defraud his creditors or to avoid service of summons,

a. Has departed, or is about to depart, from the State, or

b. Keeps himself concealed therein, or

(5) A person or domestic corporation which, with intent to defraud his or its creditors,

a. Has removed, or is about to remove, property from this State, or

b. Has assigned, disposed of, or secreted, or is about to assign, dispose of, or secrete, property."

The defendant has the right, at any time before judgment in the principal action to appear specially or generally and move, either before the clerk or the judge, to dissolve the order of attachment. G.S. 1-440.36. When defendant contests the grounds upon which the writ was issued, he need not move for dissolution but, at his option, " . . . may make the necessary allega-

tions in his answer by way of defense and await the trial."
*Whitaker v. Wade*, 229 N.C. 327, 328, 49 S.E. 2d 627 (1948).
G.S. 1-440.39 provides for discharge of attachment upon giving
bond. We do not interpret *North Georgia Finishing, Fuentes,* or
*Mitchell* as requiring notice and opportunity of hearing prior
to attachment as contended for by defendants.

In this case, we are of the opinion that defendants have
followed the procedure suggested by *Whitaker v. Wade, supra,*
and have, by way of their inartfully drawn answer, contested
the grounds upon which the attachment was issued. We, there-
fore, hold that upon this issue of material fact, defendants are
entitled to be heard. Plaintiff may well be able to prove the
averments of its affidavit. Even if it cannot, defendants may
not be able to show any damages. They are, nevertheless, entitled
to be heard on that issue.

The summary judgment for the amount due upon the note
will not be disturbed. A partial summary judgment is expressly
provided for by G.S. 1A-1, Rule 56(d).

The cause must be remanded for a hearing in accordance
with this opinion.

Affirmed in part and remanded.

Chief Judge BROCK and Judge BRITT concur.